UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF WISCONSIN

---

*In re*:

CRAIG A. SPAULDING,                                    Case Number: 25-12072-13

        Debtor.

---

THE SCHMOCK LIVING TRUST
DATED DECEMBER 7, 2020,

        Plaintiff,

v.                                                    Adversary Number: 25-00047

CRAIG A. SPAULDING,

        Defendant.

---

## DECISION ON DEFENDANT'S MOTION TO DISMISS

On September 17, 2025, Craig A. Spaulding ("Defendant") filed a voluntary Chapter 13 petition. On December 10, The Schmock Living Trust Dated December 7, 2020 ("Plaintiff"), filed a Complaint against Defendant seeking a determination that a debt owed to Plaintiff based on Defendant's personal guaranty of a note is nondischargeable.

The matter before the Court is Defendant's Motion to Dismiss the Complaint ("Motion").

### FACTS

The Complaint seeks a determination of nondischargeability of a debt under 11 U.S.C. § 523(a)(4) for a loan evidenced by a Subordinate Secured Note

(the "Note").[1]

Plaintiff is a trust. Tracy Schmock ("Schmock") is its trustee. Defendant is not a trustee of Plaintiff. He was the sole director and officer of Spaulding Restaurant Enterprises, Inc. (the "Corporation").[2]

In April 2024, the Plaintiff and Corporation entered into a loan and Note.[3] Defendant personally guaranteed the Note.

The Note provided:

1. **Maturity**. Unless otherwise accelerated by the terms of this Note, the principal amount of this Note and all accrued but unpaid interest shall be due and payable on or before April 1, 2034 (the "**Maturity Date**").

2. **Payments**; **Manner of Payment.** Beginning on May 1, 2024, and continuing on the first (1st) day of each month thereafter through and including the Maturity Date, the Company shall make payments of interest only (the "**Interest Only Payments**"). The principal amount of this Note shall be paid on or before the Maturity Date. All payments of principal and interest on this Note shall be made in lawful money of the United States of America by immediately available funds to such place as Purchaser shall designate to the Company. If any payment of principal or interest is due on a day which is not a business day in the State of Wisconsin, such payment shall be due on the next succeeding business day.

3. **Additional Interest Payments.** In addition to the Interest Only Payments described above, the Company shall pay to the Purchaser annual payments equal to seven percent (7%) (the "**NOI Interest Rate**") of the Company's Annual Normalized Net Operating Income for each calendar year during which any principal amounts are outstanding under this Note (the "**NOI Payments**"); provided, however, the aggregate amount of the

---

[1] Originally the Complaint contained an additional claim under section 523(a)(6) and a claim under section 727(a)(3). Plaintiff concedes those claims are not available so dismissal of them is appropriate. Dkt. No. 9, at 4.

[2] Dkt. No. 11 at 2, 8.

[3] Dkt. No. 1 at 2, ¶ 13; Dkt. No. 1-1 at 6-9.

Interest Rate plus the NOI Interest Rate for any calendar year during which principal and interest under this Note is outstanding shall not exceed Twenty-five Percent (25%) of the then outstanding principal balance measured as of the last day of the applicable year, and such limitation shall be prorated for any partial year. "**Annual Normalized Net Operating Income**" means Operating Income less Operating Expenses, as each is calculated on an annual basis using the preceding twelve (12) months, where "**Operating Income**" means (i) all gross income received from or attributable to food and beverages sales made in connection with the Company's restaurant and catering business during the twelve (12) month period preceding the date of determination, and "**Operating Expenses**" mean the amount equal to the sum of all costs related to the operation of the business of the Company during the twelve (12) month period preceding the date of determination, including, but not limited to, a normalized manager's salary for a person with equivalent skill and experience in the Madison, Wisconsin, area used for Craig Spaulding's management services, a normalized amount for depreciation of assets, and other items related to the operation of the Company, such as food and beverage costs, equipment costs, employment wages, and benefits for the Company's employees, sales taxes, employment taxes, rent, and earnout payments, each as determined in the Company's reasonable discretion. The Company shall make the NOI Payments to the Purchaser within ninety (90) days after the end of each calendar year.

Plaintiff became a shareholder in the Corporation in about April 2024. Defendant was an existing shareholder and the sole director and officer of the Corporation.

The Corporation defaulted on the Note. In April 2025, Plaintiff sent a letter to the Corporation notifying it of the default, acceleration of the Note, and right to collect upon Defendant's personal guaranty.[4]

---

[4] Dkt. No. 1-1 at 10 (Exh. 2); Dkt. No. 1 at 3, ¶ 31.

Two months later, Plaintiff sued the Corporation and Defendant in Dane Country Circuit Court for breach of contract.[5] Plaintiff sought to enforce the Note against Defendant and the Corporation. It demanded judgment for unpaid sums under the Note in the amount of $247,193.46.[6]

Plaintiff moved for summary judgment against Defendant and for default judgment against the Corporation.[7] The next day, Defendant filed his Chapter 13 petition. Plaintiff's motion for summary judgment against Defendant in state court is stayed. Plaintiff obtained a default judgment ("Judgment") against the Corporation on October 7. The Judgment totaled $262,487.01.[8]

The Plaintiff's claims under section 523(a)(4) are:

(1)  Defendant committed defalcation while acting in a fiduciary capacity; or

(2)  the debt is the result of embezzlement by Defendant.

Defendant moves to dismiss this adversary proceeding. In support, Defendant says the Complaint fails to state a claim upon which relief can be granted against Defendant for embezzlement. And that the Complaint fails to state a claim upon which relief can be granted for defalcation while acting in a fiduciary capacity.[9]

---

[5] Dkt. No. 1 at 3, ¶ 33; Dkt. No. 1-1 at 2, ¶¶ 8-24.

[6] *Id.*

[7] Dkt. No. 1 at 3, ¶ 34.

[8] *Id.* at 4, ¶¶ 36-37.

[9] *Id.* at 5-6, ¶¶ 56-66.

**DISCUSSION**

### I.     Jurisdiction

This Court has jurisdiction under 28 U.S.C. §§ 1334 and 157. The matter concerns determination of the dischargeability of a particular debt. This is a core proceeding under section 157(b)(2)(I). The Court may enter final judgment. 28 U.S.C. § 157(b)(1).

### II.    The Complaint Must Satisfy Rule 7012(b)(6) to Survive a Motion to Dismiss.

A defense to a complaint is that it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 12(b)(6) is made applicable in this proceeding under Fed. R. Bankr. P. 7012(b).

When considering a Rule 12(b)(6) motion, a court treats all well-pleaded allegations in a complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). All reasonable inferences are judged in favor of the non-movant. *Groom v. Krook (In re Krook)*, 615 B.R. 479, 482 (Bankr. N.D. Ill. 2020) (citing *Viamedia, Inc. v. Comcast Corp.*, 951 F.3d 429, 454 (7th Cir. 2020)).

To survive a motion to dismiss, a complaint must pass a two-step inquiry. *Iqbal*, 556 U.S. at 678-79. First, a "complaint must describe the claim in enough detail to give the defendant fair notice of its nature." *Krook*, 615 B.R. at 483 (citing *Cornielsen v. Infinium Cap. Mgmt., LLC*, 916 F.3d 589, 598 (7th Cir. 2019)). A complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007). But the complaint must provide more than labels and conclusions. *Id.* "[A] formulaic recitation of the elements of a cause of action will not do." *Id.*

Second, a complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard asks for more than a "sheer possibility" that a defendant has acted unlawfully. *Id.* As noted by the Seventh Circuit, "courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim." *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

Generally, the Court cannot look beyond the pleadings in ruling on a Rule 12(b)(6) motion. However, in addition to the factual allegations in the pleadings, the Court may take judicial notice of matters. *Chowdary v. Ozcelebi (In re Ozcelebi)*, 640 B.R. 884, 896 (Bankr. S.D. Tex. 2022).

Here, the Court must determine what allegations are necessary to show recovery is plausible under section 523(a)(4). Plaintiff must produce sufficient evidence to prove each element under section 523(a)(4). "Specifics are unnecessary, but some facts must support each element." *Id. at* 894.

The Complaint does not satisfy the requirements to survive a Rule 12(b)(6) motion to dismiss. The Complaint does more than just recite legal conclusions. Yet it does not state sufficient facts to support each element of the

6

claims raised under section 523(a)(4). It does not contain enough detail for the factual allegations to rise above speculation. For the purpose of the Motion, the Court, accepting the facts alleged in the Complaint as true, cannot draw a reasonable inference that Defendant is liable for the alleged misconduct.

### III.   Nondischargeability – 11 U.S.C. § 523(a)(4)

Section 523(a)(4) excepts from discharge debts incurred by "fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523(a)(4). To prevail under section 523(a)(4), the plaintiff must prove that the debtor: "(1) committed a fraud or defalcation while acting as a fiduciary; (2) embezzlement; or (3) larceny." *Wians v. Wians (In re Wians)*, 523 B.R. 124, 129 (Bankr. N.D. Ill. 2014). Here, the Plaintiff relies on the first prong under section 523(a)(4)—defalcation—or, in the alternative, the second prong— embezzlement.

#### A.  Defalcation While Acting In a Fiduciary Capacity

To state a claim for fraud or defalcation in a fiduciary capacity, the Plaintiff must allege that (1) a fiduciary relationship existed between the debtor and creditor at the time the debt was created, and (2) that the debt owed was caused by fraud or defalcation committed in the course of that fiduciary relationship. *Wians*, 523 B.R. at 130 (citing *Follett Higher Educ. Grp., Inc. v. Berman (In re Berman)*, 629 F.3d 761, 766 (7th Cir. 2011)). To find a debt is nondischargeable under section 523(a)(4), it is "essential" that a court find "the debtor was acting in a fiduciary capacity at the time the debt arose." *Corestates Asset Mgmt. v. Kohler (In re Kohler)*, 255 B.R. 666, 667 (Bankr. E.D. Pa. 2000).

This means that there must have been an express or technical trust at the time.

The Complaint alleges Defendant committed defalcation while acting as a fiduciary.[10] "'[A] fiduciary relationship under state law in a corporate context does not a 'fiduciary' under 11 U.S.C. § 523(a)(4) make.'" *Wachovia Sec., LLC v. Jahelka (In re Jahelka)*, 442 B.R. 663, 670 (Bankr. N.D. Ill. 2010), *abrogated on other grounds* (citing *Martello v. Fowers (In re Fowers)*, 360 B.R. 888, 896 (Bankr. N.D. Ind. 2007)). Section 523(a)(4) does not apply to fiduciary relationships implied from a contract. *See In re Frain*, 230 F.3d 1014, 1018 (7th Cir. 2000) (citing *LSP Inv. P'ship v. Bennett (In re Bennett)*, 989 F.2d 779, 784 (5th Cir. 1993)). Whether a fiduciary relationship exists under section 523(a)(4) is a matter of federal law. *Wians*, 523 B.R. at 130 (citing *Berman*, 629 F.3d at 767).

A plaintiff must show, by a preponderance of the evidence, that an express trust or a fiduciary relationship exists and that a debt was caused by the debtor's fraud or defalcation. *Id.* (citations omitted). For the purposes of section 523(a)(4), a "fiduciary relationship" can be "a difference in knowledge or power between fiduciary and principal which . . . gives the former a position of ascendancy over the latter." *Id.* (citing *Frain*, 230 F.3d at 1017).

---

[10] Dkt. No. 1 at 5-6, ¶¶ 56-66.

8

A determination of whether Plaintiff acted in a fiduciary capacity may be shown in two circumstances. Those are either an express trust or an implied fiduciary relationship. *Berman*, 629 F.3d at 768.

Thus, three elements are required to be established by a preponderance of the evidence:

    a.  the existence of a trust;

    b.  the debtor was a fiduciary of that trust when the debt was created; and

    c.  the debt was created by defalcation.

*Amundson v. Slaton (In re Slaton)*, 469 B.R. 814, 820 (Bankr. W.D. Wis. 2012); *Hellenbrand Glass, LLC v. Pulvermacher (In re Pulvermacher)*, 567 B.R. 881, 886 (Bankr. W.D. Wis. 2017) (citing *Baytherm Insulation, Inc. v. Carlson (In re Carlson)*, 456 B.R. 391, 395 (Bankr. E.D. Wis. 2011)).

Plaintiff reasons there was a breach of fiduciary duty under section 523(a)(4) when Defendant used corporate funds to pay various personal expenses including a cell phone bill, gas and personal transportation, dining, and a draw of approximately $25,000 from the Corporation.[11] Plaintiff argues Defendant should, instead, have paid the Plaintiff interest and Net Operating Income ("NOI") Payments under the Note. The use of the Corporation's funds must, Plaintiff contends, satisfy the elements necessary to establish a defalcation in a fiduciary capacity.

The Court addresses each element in turn.

---

[11] Dkt. No. 1 at 6, ¶ 64.

1.   Existence of a trust

The existence of an express trust is a question of federal law. "An express or technical trust requires an explicit declaration of trust, a clearly defined trust *res,* and an intent to create a trust. Constructive, resulting, and implied trusts do not fall with the confines of § 523(a)(4)." *Vozella v. Basel-Johnson (In re Basel-Johnson),* 366 B.R. 831, 847 (Bankr. N.D. Ill. 2007). Typically, the court "must examine the writing" in ascertaining whether a fiduciary relationship exists. 4 COLLIER ON BANKRUPTCY ¶ 523.10

There is no express trust here. There are no claims that Defendant was a trustee of Plaintiff or that he was a fiduciary of the Plaintiff Trust.

The Corporation is a Wisconsin corporation. It is not a trust. Nor is there any claim that the Corporation held any fiduciary relationship with the Plaintiff and Plaintiff is not suing the Corporation. So, no express trust has been pled.

The Complaint attaches the Note.[12] The Note does not create or identify the existence of a fiduciary relationship. It contains a personal guaranty provision.[13] A plain reading of its provisions does not establish a fiduciary relationship between the parties. Nor does it demonstrate an intent to create a trust.

The nature of the parties' transaction was funds in exchange for a loan to the Corporation. While the Complaint refers to an investment to acquire shares, an investment does not generally create a trust. Neither does a loan.

---

[12] Dkt. No. 1-1 at 6 (Exh. 1).
[13] Dkt. No. 1-1 at 9, ¶ 18 (Exh. 1).

10

The Complaint seeks recovery of amounts owed on the Note. There is no express trust.

### 2.   Implied fiduciary relationship

There is no written agreement evidencing a fiduciary relationship, so Plaintiff resorts to arguing there is an implied fiduciary relationship. In other words, that "a technical trust relationship may be created by state statute or common law doctrines that impose trust-like obligations on a party sufficient to render the debtor a fiduciary within the meaning of section 523(a)(4)." 4 COLLIER ON BANKRUPTCY ¶ 523.10.

Plaintiff appears to argue that the mere shareholder relationship created a trust-like relationship for the purpose of paying the Note. But section 523(a)(4) adopts a narrow scope of fiduciary relationships in comparison to traditional state law concepts. A party defined as a fiduciary under state law does not automatically qualify as acting in a "fiduciary capacity" for bankruptcy purposes. *Slaton*, 469 B.R. at 820.

The Seventh Circuit has found fiduciary relationships under certain circumstances. As observed by the court in *In re McGee*, a city ordinance which required security deposits to be separate from other funds, as well as a disparity in power governing those funds, constituted an "economic relation" that imposed fiduciary obligations under section 523(a)(4). *Berman*, 629 F.3d at 770 (citing *In re McGee*, 353 F.3d 537, 541 (7th Cir. 2003)). Similarly, funds paid to a contractor for a construction project are subject to statutory requirements the money is used for labor, materials, and subcontractors for

11

that project. As a result, the funds impose fiduciary obligations. But no such statute has been identified in this case.

A subset of fiduciary relationships that fall under section 523(a)(4) are those in which there is a "substantial inequality in power or knowledge in favor of the debtor." *Slaton*, 469 B.R. at 820–21 (quoting *In re Woldman,* 92 F.3d 546, 547 (7th Cir.1996)). The court in *In re Marchiando* found that a fiduciary relationship exists in situations that call for a "high standard of loyalty and care that the law imposes on trustees" in formal trusts. *In re Marchiando*, 13 F.3d 1111, 1115 (7th Cir. 1994).

These situations are "characterized by disparities in the knowledge or economic status of the participants, the fiduciary having the superior status and/or knowledge to the defrauded creditor victim." *Zamora v. Jacobs (In re Jacobs)*, 403 B.R. 565, 575 (Bankr. N.D. Ill. 2009) (citing *McGee*, 353 F.3d at 540). Relationships such as "a lawyer-client relationship, a director-shareholder relationship, and a managing partner-limited partner relationship all require [a] principal to 'repose a special confidence in the fiduciary.'" *Deady v. Hanson (In re Hanson)*, 432 B.R. 758, 774 (Bankr. N.D. Ill. 2010), *aff'd*, 470 B.R. 808 (N.D. Ill. 2012) (quoting *Marchiando*, 13 F.3d at 1116)).

But the fiduciary obligation must exist *before* the alleged wrongdoing. *Id.* Because the obligation must exist prior to the wrongdoing, a "constructive trust . . . will not qualify for purpose of § 524(a)(4)." *Frain*, 230 F.3d at 1017.

The Complaint claims that a fiduciary duty is owed because of a shareholder and creditor relationship.[14] It asserts that after Plaintiff's investment and loan, the Defendant, as president of the Corporation, breached his fiduciary duty "by failing to maintain corporate financial records, failing to make payments to creditors, and using corporate funds for personal expenses."[15] The Complaint also asserts that Defendant had sole access, control, signing authority, and use of the corporate bank accounts.[16]

Defendant, on the other hand, contends Plaintiff does not properly allege Defendant acted in a fiduciary capacity with regard to Plaintiff as a *creditor* (emphasis added).[17] Defendant maintains that Plaintiff has failed to show a "separate and distinct injury from other members" of the Corporation that would give rise to a direct claim against Defendant rather than a derivative claim against the Corporation.[18]

The Complaint does not show any "separate and distinct injury" from any of the other creditors of the Corporation that would give rise to a direct claim against the Defendant. *Flynn v. Merrick*, 881 F.2d 446, 449 (7th Cir. 1989). And the Complaint does not claim there was a fiduciary relationship between the Plaintiff and Defendant at the time the guaranty was signed. The apparent

---

[14] Dkt. No. 1 at 6, ¶ 66.

[15] *Id.*

[16] Dkt. No. 1 at 2, ¶¶ 17-19.

[17] Dkt. No. 11 at 6.

[18] Dkt. No. 11 at 6.

investment, Note, and guaranty occurred simultaneously. The debt was created at the same time as the shareholder relationship.

Moreover, even if there were a fiduciary relationship, it did not exist before the debt that is the subject of this adversary proceeding was incurred. The debt was created in April 2024. The acts complained of were:

- no access to records and accounts from April 2024 to February 2025;

- no payment to Plaintiff on or after March 1, 2025;

- closure of the Corporation's restaurant after February 2025;

- using funds of the Corporation in December 2024 to pay for car, cell phone, and credit card bills; and

- withdrawals of cash from the Corporation's Accounts.[19]

The Complaint contains no allegation that Plaintiff requested or was denied access to records or accounts. The failure to make a payment to the Plaintiff on the Note does not evidence anything more than failure to pay a debt to a creditor. Businesses fail. In this case, the Corporation eventually closed the restaurant. Allegations of failure of a business that owed money to a creditor do not, as set out in the Complaint, state factual allegations of a breach of a fiduciary duty.

While the alleged breach of Defendant using corporate funds for personal benefit might have resulted in reduced recovery by Plaintiff as a judgment

---

[19] Dkt. No. 1 at 4-5, ¶ 48-51, as corrected at Dkt. No. 9 at 3.

14

creditor of the Corporation, Plaintiff has not pled or demonstrated a basis for standing to assert such a breach against Defendant. *Mut. Mgmt. Servs., Inc. v. Fairgrieves (In re Fairgrieves)*, 426 B.R. 748, 754 (Bankr. N.D. Ill. 2010).

At best, for officers and directors to have a fiduciary duty to creditors, a corporation must be both insolvent and no longer a going concern. *Beloit Liquidating Tr. v. Grade*, 2004 WI 39, ¶ 42, 270 Wis. 2d 356, 383, 677 N.W.2d 298, 311. The Complaint does not allege the Corporation was insolvent and no longer a going concern while Defendant was the director and officer of the Corporation. Nor, more to the point, that it was at the time the debt was incurred in April 2024. To the contrary, six payments were made to Plaintiff after the Loan was made.

A superior knowledge of day-to-day operations is not sufficient to establish a position of ascendancy under a disparate knowledge/status approach. *Frain*, 230 F.3d at 1017. While a substantial concentration of power under the corporation's internal structure may create a fiduciary duty under section 523(a)(4), that alone is not sufficient. *See Berman*, 629 F.3d at 770.

The Complaint alleges Defendant had sole access, control, signing authority and use of the corporate bank accounts. It says Plaintiff held a 20% shareholder interest in the Corporation. Taken as true, this could suggest unequal status. There is, however, no assertion that Plaintiff was denied access to information after requesting it. Nor is there a claim that it was unequal status that created the debt to Plaintiff.

15

There is no written agreement evidencing a fiduciary relationship. The Court will consider whether a state law or common-law doctrine might impose trust-like obligations on Defendant to create a fiduciary relationship in the form of fiduciary duties. Even so, the Court does so being mindful that a fiduciary relationship is a matter of federal law and narrower than it might be under state law.

The Complaint asserts a fiduciary relationship exists under Wisconsin corporate law. It alleges Defendant, as president of the Corporation, had a fiduciary duty to use corporate assets to pay the debts of the Corporation, including the Note.[20] Under a state law approach, fiduciary duties may have arisen after Plaintiff became a stockholder in the Corporation. But that does not mean there were any fiduciary duties owed to Plaintiff at the time the debt was created or that imposed a trust on corporate assets giving rise to Plaintiff's claim as a creditor.

If it did, an extension of that theory would suggest that all revenue of a company is a trust to be used solely to pay creditors. Further, that every owner of a business is required to maintain good financial records as a type of fiduciary obligation to creditors or other owners.

While a fiduciary relationship may arise under state law, this does not automatically create a fiduciary relationship under federal bankruptcy law. It is

---

[20] Dkt. No. 1 at 5, ¶ 62.

16

not enough to show Defendant was a fiduciary under applicable state law. Exceptions to the discharge require more.

Without more, Defendant's alleged position as president of the Corporation does not create the formality or intent necessary to show a fiduciary relationship for the purposes of section 523(a)(4). The Complaint fails to satisfy the requirement that the facts and law demonstrate the existence of a trust or fiduciary relationship.

### 3. Defalcation

"Defalcation" occurs when a party misappropriates funds held in trust for another in a fiduciary capacity and fails to properly account for such funds. "Defalcation has also been defined as 'a failure to account for money or property that has been entrusted to another.'" *Wians*, 523 B.R. at 130 (citing *Hanson*, 432 B.R. at 775); *Green v. Pawlinski (In re Pawlinski)*, 170 B.R. 380, 389 (Bankr. N.D. Ill. 1994).

The Supreme Court has held that a finding of defalcation under section 523(a)(4) includes a culpable state of mind requirement "involving knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *See Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 269 (2013).

To establish a claim for defalcation, the plaintiff must establish that (1) the debtor acted as a fiduciary to the creditor at the time the debt was created, and (2) the debt was caused by fraud or defalcation. *Berman*, 629 F.3d at 766. Fraud for purposes of section 523(a)(4) requires intentional deceit. *Shriners*

17

*Hosp. v. Bauman (In re Bauman)*, 461 B.R. 34, 45 (Bankr. N.D. Ill. 2011).

An objective standard is used to determine defalcation. *Pawlinski*, 170 B.R. at 389. Mere negligence is not defalcation. *Meyer v. Rigdon*, 36 F.3d 1375, 1382–85 (7th Cir. 1994). Hence, to establish that a debt is nondischargeable for reason of fraud or defalcation while acting in a fiduciary capacity, the creditor must establish, by a preponderance of the evidence, the existence of an express trust or a fiduciary relationship and a debt caused by the debtor's defalcation. *Grogan v. Garner*, 498 U.S. 279, 291 (1991); *Woldman*, 92 F.3d at 547.

No debt was caused by Defendant's defalcation. If taken as true, the allegations fail to satisfy the requirement of stating a claim. The debt existed on April 10, 2024. The Corporation made six payments to Plaintiff on the Note between May 2024 and February 2025.[21] Thus, the debt that is evidenced by the Note existed in April 2024.

The actions complained of by Plaintiff related to Defendant's payment of personal obligations like a cell phone, food or transportation, and withdrawal of funds from the Corporation. Those acts were not acts creating a debt to Plaintiff. They occurred after the debt was created and after various payments had been made to Plaintiff.

Additionally, the Complaint insufficiently pleads defalcation. "Defalcation" pertains to a failure to produce funds entrusted to a fiduciary. 4

---

[21] Dkt. 1-1 at 4, ¶ 9.

18

COLLIER ON BANKRUPTCY ¶ 523.10. Mere negligence is not an act of defalcation. The Supreme Court in *Bullock v. BankChampaign* held that defalcation under section 523(a)(4) requires "a culpable state of mind" with a "knowledge of, or gross recklessness in respect to, the improper nature of the relevant fiduciary behavior." *Bullock*, 569 U.S. at 269. The Supreme Court included within the scope of intentional conduct "not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent." 4 COLLIER ON BANKRUPTCY ¶ 523.10. An equivalency to actual knowledge exists where a debtor fiduciary "consciously disregards" or is willfully blind to "a substantial and unjustifiable risk" that his conduct will breach a fiduciary duty. *Bullock*, 569 U.S. at 274.

The Complaint does not allege particular facts that show "a culpable state of mind" to prove Defendant committed defalcation. The Complaint does not detail knowledge of improper behavior or gross recklessness with respect to any fiduciary duty. The Complaint posits Defendant's failure to maintain any corporate accounting records was *likely* an effort to conceal his misappropriation.[22] This allegation is conclusory. Mere conclusory allegations are insufficient. Plaintiff cannot survive a 12(b)(6) motion by simply reciting labels, conclusions, or formulaic elements of a cause of action. Plaintiff does not provide specific facts as to Defendant's state of mind during the alleged wrongdoing.

---

[22] Dkt. No. 1 at 6, ¶ 65.

19

The defalcation in a fiduciary capacity claim does not survive the Rule 12(b)(6) motion. Plaintiff has not stated a plausible claim upon which relief can be granted for defalcation while acting in a fiduciary capacity under section 523(a)(4). The motion to dismiss the claim is granted.

### B.  Embezzlement – 11 U.S.C. § 523(a)(4)

The Plaintiff argues, in the alternative, that the debt owed under Defendant's guaranty is nondischargeable as an embezzlement. The term "embezzlement" in the Bankruptcy Code is a federal law concept. So federal law, not state law, controls its meaning in section 523(a)(4). *SAI Supermarkets, Inc. v. Soto (In re Soto)*, 676 B.R. 612, 616 (Bankr. E.D. Cal. 2026).

Embezzlement is the "fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." *In re Weber*, 892 F.2d 534, 538 (7th Cir. 1989) (quoting *Moore v. United States,* 160 U.S. 268, 269 (1895)). The elements of embezzlement are: (1) property of another lawfully originally obtained by a person; (2) that is misappropriated, used or consumed for a purpose other than what it was entrusted; and (3) with fraudulent intent. *Bombardier Capital, Inc. v. Tinkler (In re Tinkler)*, 311 B.R. 869, 876 (Bankr. D. Colo. 2004); *First Delaware Life Ins. Co. v. Wada (In re Wada)*, 210 B.R. 572, 576 (B.A.P. 9th Cir. 1997).

Plaintiff argues Defendant took funds that were in the possession of the Corporation, and the use of those funds was the equivalent of a fraud. Further that those funds were Plaintiff's property.

20

First, Plaintiff did not entrust the funds to Defendant. Instead, Plaintiff made a loan to the Corporation and gave the money to it. Defendant guaranteed the loan. Second, the funds used were corporate money, not Plaintiff's.

In this situation, courts have recognized an additional element, particularly where standing is at issue: that the property owned by another is rightfully in the possession of the defendant. *Cox v. Corona (In re Corona)*, 657 B.R. 554, 565 (Bankr. N.D. Ga. 2024). "Standing to bring an embezzlement claim under § 523(a)(4) requires that the plaintiff *own* the allegedly embezzled property" (emphasis added). *F&F Invs. Grp., LLC v. Case (In re Case)*, 636 B.R. 852, 858 (Bankr. S.D. Fla. 2022). Standing is a threshold issue where ownership is questionable or contested.

The Complaint does not plausibly allege that Plaintiff *owned* the property Defendant allegedly embezzled. Money came into the hands of the Corporation from its business operations and business transactions. Taken as true, the Complaint alleges that funds from the Corporation then came into the hands of Defendant over a period of time. Thus, there is no allegation that Defendant used funds belonging to the Plaintiff. Instead, on its face the Plaintiff simply says that Defendant used funds of the Corporation and, instead, should have paid a debt.

Plaintiff conflates its status as a creditor and that of a shareholder. It seeks payment of unpaid amounts under the Note and guaranty. Its theory is

21

that Defendant embezzled money from the Corporation. Plaintiff tries, as a creditor, to assert a claim against Defendant it does not own.

There is not a claim belonging to Plaintiff. That claim, if any, would belong to the owner of the funds—the Corporation. Plaintiff has not asserted a claim on behalf of the Corporation and all its creditors. It simply assumes that it owned the receipts of the Corporation and so it should have been paid on its Note. Based on that assumption, Plaintiff theorizes the use of corporate funds by Defendant must be a theft of Plaintiff's money. Taken to its logical conclusion, it would mean that all creditors could assert claims for embezzlement of a corporation's funds if the manager of a corporation received any compensation when the creditor was not paid.

It is undisputed there was a loan and that Plaintiff was a shareholder in the Corporation. The Complaint states Plaintiff had a 20% shareholder interest in exchange for a $200,000 investment in the Corporation. Plaintiff may have had an interest in the Corporation. That simply represents a stake in the business—its profits and equity, if any.

Further, the Plaintiff's funds were not entrusted to the Defendant for a specified purpose. *See Brady v. McAllister (In re Brady)*, 101 F.3d 1165, 1173 (6th Cir. 1996). The money was loaned to the Corporation to be used in its business. The loan was made in April 2024. The business was operating at the time and bringing in some revenue. It was also, as is the case with any restaurant, incurring expenses.

Between May 2024 and March 2025, six monthly payments were made by the Corporation to Plaintiff. In April 2025, Plaintiff declared the default in payments and sued the Corporation and Defendant to collect under the Note and guaranty.

Plaintiff says the funds should not have been paid to or on behalf of Defendant. It merely complains the Plaintiff wasn't paid interest-only payments after December 2024.[23] While no NOI payments were made to Plaintiff, there is no claim that any NOI existed.

It is undisputed that Defendant did not take a salary from the Corporation in 2024 or 2025 although he was entitled to do so under the Note. Instead, he took what he referred to as draws at times. These were used to pay various personal expenses including a cell phone bill, gas and personal transportation, dining, and a draw of approximately $25,000 over the period at issue.

Defendant was entitled to compensation from the Corporation. It was corporate income used by him, not property of the Plaintiff.

Finally, to prevail the Plaintiff must plead facts that would demonstrate a culpable state of mind to prevail on an embezzlement claim. *Bullock,* 569 U.S. at 269; *see also Hebl v. Windeshausen (In re Windeshausen),* 568 B.R. 299, 308

---

[23] In its Brief in Opposition to Defendant's Motion to Dismiss, Plaintiff says its counsel noticed a repeated typo in Paragraphs 47-51 identifying the time period of various transactions using corporate accounts in December 2025. Plaintiff meant to allege this occurring in December 2024. Dkt. No. 9 at 3.

23

(Bankr. W.D. Wis. 2017), *aff'd sub nom., Hebl v. Windeshausen,* 590 B.R. 871

(W.D. Wis. 2018).

One cannot embezzle his own property. *Adamo v. Scheller (In re Scheller),*

265 B.R. 39, 54 (Bankr. S.D.N.Y. 2001). If the Plaintiff owned the Corporation's

money, then Defendant did as well. Plaintiff expected the Corporation to pay

Operating Expenses. The Note says that Defendant was entitled to distributions

from the Corporation in the form of compensation. The Additional Interest

Payments section of the Note defines "Operating Expenses" to mean:

> [T]he amount equal to the sum of all costs related to the operation of the business of the Company during the twelve (12) month period preceding the date of determination including, but not limited to, a normalized manager's salary for a person with equivalent skill and experience in the Madison, Wisconsin, area used for Craig Spaulding's management services, a normalized amount for depreciation of assets, and other items related to the operation of the Company, such as food and beverage costs, equipment costs, employment wages, and benefits for the Company's employees, sales taxes, employment taxes, rent, and earnout payments, each as determined in the Company's reasonable discretion.[24]

So Defendant was entitled to certain payments, benefits, or wages at the same

level or terms as similar experienced managers in Madison.

The Complaint suggests that payments to or for Defendant that were not

"normalized manager's salary" were related to the second element of

embezzlement. According to the Complaint, Defendant did not pay the monthly

interest-only payment or the NOI payment in December 2024. Those were debt

payments and not Operating Expenses.

---

[24] Dkt. No. 1-1 at 7, ¶ 3.

The Complaint says the failure in payment was because Defendant used the Corporation's checking account to pay personal expenses. Some of these expenses include:

- DoorDash and personal dining expenses

- Rides on Lyft, gas, and other personal transportation expenses

- A personal car loan

- Repairs for a vehicle

- Personal credit cards

- Monthly cell phone bill

Additionally, the Complaint asserts Defendant withdrew $25,000 in cash from the corporate checking account in December 2024. While these amounts were not paid as salary, there is not a claim that the sum of these payments were in excess of the wages and benefits of managers in Madison with similar experience.

The Complaint does not satisfy the third element—whether Defendant embezzled the funds with fraudulent intent or deceit. When alleging fraud, a Complaint must meet the heightened pleading standard required by Rule 9(b). Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Plaintiff must "allege the who, what, where, when of the alleged fraud." *Swiatek v. CVS Pharm., Inc.*, No. 23-CV-01523, 2024 WL 1328801, at *2 (N.D. Ill. Mar. 28, 2024) (quoting *Ackerman v. Nw. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999)). This ensures Plaintiff has completed an "investigation in sufficient depth to assure

25

that the charge of fraud is responsible and supported, rather than defamatory and extortionate." *Id.*

Fraudulent intent has been defined as the debtor's knowledge that he has no right to use the property. *Krook*, 615 B.R. at 485–86 (citing *FNA Grp., Inc. v. Arvanitis (In re Arvanitis)*, 523 B.R. 633, 639 (Bankr. N.D. Ill. 2015)). Plaintiff may also show the fraudulent intent element of embezzlement by circumstantial evidence. For instance, embezzlement is shown where a debtor had sole access to the creditor's funds and surreptitiously took them for his own benefit, despite knowing that the creditor wanted the funds returned. *Jacobs*, 403 B.R. at 575.

Plaintiff pleads Defendant failed to save receipts documenting the use of corporate funds to determine whether any of the charges identified above was a legitimate business purpose. The failure to maintain receipts, standing alone, is not sufficient.

Fraudulent intent or deceit must be pled with particularity. Fed. R. Civ. P. 9(b). An allegation of poor accounting is not enough to prove fraudulent intent or deceit. And there is no indication of a pattern of fraudulent intent or deceit. For example, the Complaint does not allege an accumulation of false representations made by Defendant with the intent of misleading or deceiving Plaintiff.

The Complaint also asserts Defendant used his position as president of the Corporation to gain access to corporate funds which he used to pay his

26

personal expenses. This allegation is conclusory. It is not enough to establish Defendant engaged in deceptive conduct.

The Complaint does not plead with the requisite particularity embezzlement under section 523(a)(4). The embezzlement claim fails to satisfy the pleading standard of Rule 12(b)(6).

## CONCLUSION

For these reasons, the Complaint fails to state a claim for relief under section 523(a)(4). Accepting all well-pleaded factual allegations as true, the Complaint does not plausibly allege all the requisite elements that Defendant committed defalcation while acting as a fiduciary. Likewise, the Complaint fails to plausibly allege Defendant committed embezzlement, as it does not plead specific facts demonstrating the funds were property of Plaintiff or the requisite fraudulent intent and deceit.

The Complaint does not survive Defendant's Rule 12(b)(6) motion. Accordingly, the Court grants Defendant's motion to dismiss this adversary proceeding.

This decision constitutes findings of fact and conclusions of law under Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.

A separate order consistent with this decision will be entered.

Dated: June 16, 2026

BY THE COURT:

_____
Hon. Catherine J. Furay
U.S. Bankruptcy Judge

27